SLATTERLY v MADIOL

Docket No. 236266. Submitted March 4, 2003, at Grand Rapids. Decided
June 24, 2003, at 9:15 A.M.

Thomas S. Slatterly, Susan R. Slatterly, and Robert L. Slatterly
brought an action in the Allegan Circuit Court against the Shore-
wood Association (Shorewood), an association incorporated under
the summer resort and assembly association act, MCL 455.1 *et seq.*,
and its individual directors, and James and Sylvia Madiol after the
Madiols prohibited the Slatterlys from parking vehicles on a dis-
puted piece of property that included a portion of the Madiols' own
lot. The Slatterlys claimed that they had acquired rights over the
Madiols' lot either by adverse possession or prescriptive easement.
Previously, the Madiols had landscaped the disputed portion of
their lot to prevent parking, but Shorewood had ordered the Madi-
ols to remove the landscaping pursuant to an amendment of the
association's bylaws, which required prior approval of landscaping
projects by Shorewood's board of directors. Shorewood filed a
counterclaim against the Slatterlys and a cross-claim against the
Madiols, seeking, in essence, a declaration that Shorewood owned
the disputed property and that neither the Slatterlys nor the Madi-
ols had a real-property interest in the property, that Shorewood
had sole discretion to regulate the use of the property, and that its
recent amendment of the bylaws was valid. Shorewood and the
Madiols moved for summary disposition. The trial court, Harry A.
Beach, J., granted the Madiols' motion regarding the Slatterlys'
claim of adverse possession and prescriptive easement, but denied
their motion against Shorewood, concluding that because Shore-
wood had the power to regulate the use of the disputed areas pur-
suant to statute and its bylaws, the Madiols could not argue that
Shorewood's exercise of this power constituted a breach of the
covenant of quiet enjoyment. The trial court also concluded that
Shorewood had the authority to make bylaws to manage the prop-
erty, including the disputed space, and that the recent amendment
was reasonable. Thus, the Madiols were enjoined from restricting
access to the disputed area, and they were ordered to remove the
obstruction. The Madiols appealed, and the Slatterlys cross-
appealed the dismissal of their claims.

The Court of Appeals *held*:

1. The trial court erred in applying the amended bylaw retroactively to the Madiols' landscaping of the disputed portion of their lot. Bylaws, like statutes, are presumed to operate prospectively unless a contrary intent is clearly manifested. There is nothing in the language of the amendment that indicates an intent that it be applied retroactively.

2. Under the plain language of the act, the Madiols do not possess a real-property interest in their lot, the rights to which were violated by Shorewood's actions in demanding that the Madiols remove their landscaping and allow the Slatterlys to park on their lot. Pursuant to the act, a stockholder who purchases shares associated with a specific lot holds a personal-property interest only. However, under Shorewood's bylaws, the Madiols are specifically entitled to the use of their entire lot, and there is nothing in the bylaws authorizing Shorewood to exclude the Madiols from a portion of their lot, or authorizing the use of the Madiols' lot by another stockholder, the Slatterlys. Thus, Shorewood violated its own bylaws by restricting the Madiols from using a portion of their lot and by granting the Slatterlys the right to use the disputed area. The trial court's grant of injunctive relief must be reversed.

3. The trial court properly denied the Madiols' motion for summary disposition on the basis that allowing Shorewood to force the Madiols to permit the Slatterlys to use the Madiols' lot would not violate the covenant of quiet enjoyment. The covenant of quiet enjoyment is breached only when the landlord obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold. Here, the Madiols cannot show a substantial interference with the use of their lot because it is undisputed that the Madiols enjoyed the beneficial use of their lot for many years before learning that a portion of the disputed area was on their lot.

4. The Slatterlys' claim that they acquired a prescriptive easement over the driveway area in the Madiols' lot was properly dismissed. There is no case law supporting a claim that one lessee may obtain an easement over lands occupied by another lessee, where both leases are held by a single property owner. Furthermore, where the easement claimed is appurtenant, and not in gross, it has been held that an owner of land cannot have an easement in his own land. Here, the Madiols' and Slatterlys' lots are both owned by Shorewood. Thus, the Slatterlys cannot claim to have gained a prescriptive easement over the disputed area.

Affirmed in part, reversed in part, and remanded for further proceedings on the Madiols' claims against Shorewood and the Slatterlys.

*Sheridan Law Offices, P.C.* (by *Philip J. Sheridan*), for Thomas S., Susan R., and Robert L. Slatterly.

*Cunningham Dalman, P.C.* (by *Andrew J. Mulder* and *P. Haans Mulder*), for James and Sylvia Madiol.

*Warner, Norcorss & Judd, LLP* (by *John H. Logie* and *Christian E. Meyer*), for the Shorewood Association.

Before: Whitbeck, C.J., and Cavanagh and Bandstra, JJ.

Per Curiam. In this property dispute involving the summer resort and assembly association act[1] (the act), appellants/cross-appellees James and Sylvia Madiol (the Madiols) appeal by right the trial court's denial of their claim for summary disposition with respect to cross-plaintiff-appellee/cross-appellee Shorewood Association (Shorewood), and the trial court's grant of Shorewood's concurrent motion for summary disposition. In the same order, the trial court denied a motion for summary disposition on behalf of appellees/cross-appellants Thomas S. Slatterly, Susan Ruskusky Slatterly, and Robert L. Slatterly (the Slatterlys) with respect to the Madiols. The Slatterlys cross-appeal that part of the order.

### I. BASIC FACTS AND PROCEDURAL HISTORY

#### A. BACKGROUND

This case involves a property dispute between neighbors, the Slatterlys and the Madiols, over the use of a driveway area that lies partly on a lot

---

[1] MCL 455.1 *et seq.*

assigned to the Madiols (lot 56) and partly on a lot assigned to a third party, the Vernons (lot 57). The Slatterlys have been the holders of lot 2, across the street, since 1972. These lots are located in a community of summer homes in Saugatuck and are owned by Shorewood, which was incorporated under the act in 1902. Pursuant to the articles of incorporation, the directors of Shorewood (the directors) enacted bylaws. These bylaws were amended in August of 1994 and on September 25, 1999.

A previous arrangement regarding the use of the disputed space dates approximately to 1930, when the holders of lot 57, the Smiths, apparently agreed to allow the holders of lot 2, the Haskinses, to park on the disputed space in exchange for access to a walkway on lot 2 leading to the beach. The Slatterlys maintain that this use was not permissive. However, when Robert Slatterly purchased his shares in 1972, the Haskinses and Smith's daughter told Slatterly that he had permission to use the disputed space, which he did on a seasonal basis. None of the parties appears to have known initially that the disputed space was in lot 56 as well as lot 57. Although Shorewood maintains that the directors knew of, and consented to, this arrangement, the Madiols maintain that Shorewood never approved, authorized, or otherwise sanctioned it.

The Madiols purchased the shares corresponding to lot 56 on January 4, 1988. In 1992, the Madiols surveyed their lot before renovating their cottage and learned that a portion of the disputed area was in lot 56. In June of 1992, the Madiols wrote a letter giving the Slatterlys permission to use the northwest corner of lot 56. However, in May of 1998, James Madiol told Thomas Slatterly that he could no longer park his car

in lot 56, ostensibly because the Madiols planned to construct a stairway to the road. In June of 1998, James Madiol sent a letter to the Slatterlys revoking their permission to use the disputed space.

Sometime between December of 1998 and May of 1999, the Madiols placed a pile of landscaping timbers and sand in the disputed area of lot 56 and had a carpenter "landscape" the area using the materials. The landscaping prevented an automobile from entering the lot at that point by raising the height of the property at the edge of the road. Despite letters, threatened legal action by Shorewood, and a petition, the Madiols refused to move the materials and maintained that Shorewood's bylaws did not cover landscaping projects. In September of 1999, Article 26 of Shorewood's bylaws was amended to include a provision requiring prior approval by Shorewood's board of directors for a number of landscaping projects, including the building, removal, or barricading of roads or driveways. The amendment also provided that any structure that was erected without the board's prior approval "shall, in the sole discretion of the Board of Directors, constitute a nuisance and shall be subject to removal by the Board Of Directors" in any manner the board deems proper and at the stockholder's expense.

### B. THE LAWSUITS

Although Shorewood may have supported the Slatterlys' claim to use the driveway, the Slatterlys filed suit against Shorewood[2] and the Madiols in March of

---

[2] The individual defendants William Reininga, Jr., Nancy Budd, Mary Lou Graham, Stephen Clark, and Mary Hansman Barrows were Shore-

2000, claiming they had acquired rights over the disputed portion of lot 56 either through adverse possession or a prescriptive easement. They also brought a shareholder derivative suit against Shorewood for failing to take further action against the Madiols. Shorewood then filed a counterclaim against the Slatterlys and a cross-claim against the Madiols, seeking a declaration: (1) that Shorewood owned the disputed space in fee simple absolute, (2) that neither the Slatterlys nor the Madiols had a real property interest in the disputed space, (3) that Shorewood had sole authority to regulate the use of the disputed space, (4) that Shorewood's bylaws were duly adopted and do not violate MCL 455.12, (5) that Shorewood had the right to declare that the Slatterlys could use the disputed space while the Madiols could not, and (6) that Shorewood was entitled to injunctive relief and to force the removal of the Madiols' obstruction. The Madiols filed a cross-claim against Shorewood, but later stipulated its dismissal.

### C. THE TRIAL COURT'S DECISION

In April of 2001, Shorewood moved for summary disposition, as did the Madiols. The Slatterlys responded. Following arguments in May of 2001, the trial court granted the Madiols' motions for summary disposition regarding the Slatterlys' claims of adverse possession and prescriptive easement on the grounds that the Slatterlys did not raise these claims against Shorewood, the actual owners of the property. However, the trial court denied the Madiols' motion for

---

wood's directors and were initially included in the suit. They are not parties to this appeal.

summary disposition of Shorewood's claims, concluding that because Shorewood had the power to regulate the use of the disputed area pursuant to the act and its bylaws, the Madiols' could not argue that Shorewood's exercise of this power constituted a breach of the covenant of quiet enjoyment. The trial court further found that Shorewood had the authority to make reasonable bylaws to control and manage the property, including use of the disputed space, and concluded that Article 26 of the amended bylaws was reasonable as a matter of law.

In accordance with these findings, the trial court enjoined the Madiols from restricting access to the disputed space and ordered them to remove the obstruction. The trial court also denied Shorewood's motion for summary disposition regarding the Slatterlys' shareholder derivative suit. The Slatterlys stipulated dismissal of their claims of adverse possession and prescriptive easement against Shorewood and indicated that their shareholder derivative claim had been settled.

### II. THE MADIOLS' APPEAL

#### A. STANDARD OF REVIEW

We review de novo a trial court's interpretation of statutory language,[3] as well as the trial court's decision to grant or deny a motion for summary disposition.[4] Although actions to determine interests in land are equitable in nature and are thus reviewed de

---

[3] *Cochrane v Brown*, 234 Mich App 129, 131; 592 NW2d 123 (1999).

[4] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

novo, we review the trial court's findings of fact for clear error.[5]

## B. LEGAL STANDARDS

To successfully oppose a motion under MCR 2.116(C)(10), the nonmoving party must set forth evidence of specific facts showing that a genuine factual issue exists.[6] In evaluating the motion, the trial court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion.[7] If the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law.[8]

## C. RETROACTIVE APPLICATION OF AMENDED ARTICLE 26

The amended Article 26 specifies, in pertinent part, that "[n]o parking space, driveway, or road shall be removed from any lot within the grounds of the Association without the prior approval of the Board of Directors," and "[n]o barrier or obstruction to any parking space, driveway, or road shall be erected on any lot within the grounds of the Association without the prior approval of the Board of Directors." Amended Article 26 further provides:

> Any such . . . parking space, driveway, or road, or barricade or obstruction thereto, that is erected or placed on any lot within the Association without prior approval of the

---

[5] *Sackett v Atyeo*, 217 Mich App 676, 680; 552 NW2d 536 (1996).

[6] *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999).

[7] MCR 2.116(G)(5); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

[8] MCR 2.116(C)(10), (G)(4); *Quinto, supra* at 362.

Board of Directors shall, in the sole discretion of the Board of Directors, constitute a nuisance and shall be subject to removal by the Board of Directors in any manner they deem proper and at the shareholder's expense.

The Madiols argue that the trial court erred in applying this amendment retroactively. We agree.

Bylaws are generally construed in accordance with the same rules used for statutory construction.[9] Under these rules, " 'statutes are presumed to operate prospectively unless the contrary intent is clearly manifested.' "[10] In this case, the language of the amendment contains no manifestation of intent to effect retroactive application. Moreover, the applicable provision of the amendment states that no barrier to a driveway or parking space "shall be erected" without the board's permission, and "[t]he word 'shall' in a statute indicates a prospective operation unless accompanied by other words indicating a contrary intention."[11] There are no words indicating a contrary intention in the amended Article 26. Therefore, we conclude that the trial court erred in applying the amended Article 26 retroactively to the Madiols' erection of a barrier in the disputed area of lot 56.[12]

---

[9] 8 Fletcher, Cyclopedia Corporations, § 4195, p 792.

[10] *Franks v White Pine Copper Div*, 422 Mich 636, 671; 375 NW2d 715 (1985), quoting *Selk v Detroit Plastic Products*, 419 Mich 1, 9; 345 NW2d 184 (1984) (BUTZEL, J., dissenting).

[11] *People v Lowell*, 250 Mich 349, 364-365; 230 NW 202 (1930).

[12] Even if the amended Article 26 had been applicable retroactively, we note that the trial court erred in finding it reasonable as a matter of law. Under MCL 455.12, the stockholders have the power to enact bylaws to regulate the management of the property, and this provision specifically permits bylaws that "prohibit and abate all nuisances" and "regulate the erection of buildings on the lots assigned and leased to the stockholders." However, MCL 455.12 also requires the bylaws to be reasonable. In our view, the Madiols raised a valid question respecting the underlying propriety of the board's actions, particularly in light of its close relationship

### D. SHOREWOOD'S EXERCISE OF CONTROL OVER THE MADIOLS' LOT

The Madiols further argue that, despite Shore-wood's legal title in the lands owned by the corporation, Shorewood's actions violated the "attached and appurtenant rights" that they received in their lot by requiring them to provide parking for the Slatterlys and forcing the Madiols to remove their landscaping. Shorewood responds that the shares the Madiols hold are personal property only, and argues that the "attached and appurtenant" language does not give rise to a real property interest. We begin our analysis by examining the statutory language.

### 1. CREATION OF A REAL PROPERTY INTEREST PURSUANT TO THE ACT

Pursuant to the act, individuals acquire the right to use a lot by purchasing shares in the corporation.[13] The act specifies that these shares are personal property.[14] Under the act, assignment of the lots to the stockholders may be governed by the bylaws of the corporation,

> [p]rovided, [t]hat *any such lot or lots so assigned allotted or confirmed to such stockholders shall be deemed and con-*

---

with Robert and Thomas Slatterly. We reach this conclusion because the "sole discretion" language of Article 26, as amended, is quite draconian. While the Madiols' claim that a finding in Shorewood's favor could lead to future encroachments, such as the designation of their entire lot as a parking lot, is somewhat specious, they do raise a question of fact regarding whether the enactment of the amendment was reasonable. Accordingly, regardless of whether the amended Article 26 applied retroactively, remand would have been necessary to allow the finder of fact to make this determination. See *Highland Park Ass'n v Boseker*, 169 Mich 4, 9; 135 NW 106 (1912) (reasonableness of bylaws is a question of fact).

[13] MCL 455.21.

[14] MCL 455.14.

*sidered as appurtenant and attached to a certain share or shares of capital stock* in such corporation, which shall be designated at the time of such assignment, allotment or confirmation, and any assignment, transfer or other disposition of such capital stock shall be held to carry with it, the right to such lot or lots so appurtenant or attached to the same; and *it shall not be lawful for such stockholder to in any manner whatsoever, sell, assign, transfer or dispose of any right, title, claim or interest he may have or acquire in any lot or lots assigned, allotted or confirmed under such by-laws and regulations, separated or detached from the share or shares of capital stock to which it shall be appurtenant or attached* . . . .[15]

Thus, under the act, the owner of shares may not transfer any ownership interest in the property separate from the owner's shares. The only provision in the act under which a stockholder might acquire ownership of the lot to which the share is attached is in the event the corporation was dissolved, at which time each stockholder would become the owner in fee of the lot to which the stockholder's share was assigned.[16]

In interpreting statutory language, this Court's obligation is to discern and give effect to the Legislature's intent as expressed in the words of the statute.[17] This Court is to give the words of a statute their plain and ordinary meaning, and look outside the statute to ascertain the Legislature's intent only if the statutory language is ambiguous.[18] Where the language is unambiguous, "we presume that the Legislature intended

---

[15] MCL 455.21 (emphasis added).

[16] See MCL 455.21.

[17] *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000); *Massey v Mandell*, 462 Mich 375, 379-380; 614 NW2d 70 (2000).

[18] *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995).

the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written."[19] Similarly, courts may not speculate about an unstated purpose where the unambiguous text plainly reflects the intent of the Legislature.[20] In addition, when reviewing a statute, this Court should presume every word is used for a purpose and, to the extent possible, give effect to every clause and sentence. "The Court may not assume that the Legislature inadvertently made use of one word or phrase instead of another."[21] Moreover, the Court should avoid a construction that renders any part of the statute surplusage or nugatory.[22]

Applying these principles, we conclude that the act does not create a present real property interest in the Madiols' favor. First, as noted in *Highland Park Ass'n v Boseker*, "the power to make reasonable by-laws 'for the management, control, and disposition of the property, affairs, and concerns of said corporation' is given by the very terms of the statute."[23] In addition, as Shorewood argues, the act plainly provides that the stock held by the stockholders "shall be deemed personal property . . . ."[24]

Moreover, although the act also specifies that the bylaws of the corporation may allow the stockholders to select a lot for the purpose of building, it specifies that it is the directors who shall cause the land to be

---

[19] *DiBenedetto, supra* at 402.

[20] See *City of Lansing v Lansing Twp*, 356 Mich 641, 649-650; 97 NW2d 804 (1959).

[21] *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000).

[22] *In re MCI Telecom Complaint*, 460 Mich 396, 414; 596 NW2d 164 (1999).

[23] *Highland Park, supra* at 8; see also MCL 455.12.

[24] MCL 455.14.

surveyed.[25] Further, the act specifically provides that "[w]henever any such corporation shall cause to be platted any part or portion of its lands in the manner prescribed in the foregoing section of this act, it may by its by-laws, provide the manner in which the lot or lots may be assigned, allotted or confirmed to its several stockholders, and the terms and conditions upon which the same shall be held by them . . . ."[26] Therefore, the act grants broad power to the corporation to set the terms of the use of all lands owned by the corporation, subject to the "reasonableness" of the bylaws, and the caveat that any lots "assigned" pursuant to the bylaws shall be attached to certain shares of stock.

The Madiols point to the "attached and appurtenant" language of MCL 455.21 for their assertion that the act provides a real-property interest. However, as noted above, MCL 455.21 provides only that, should the bylaws provide that the lots are assigned, the lots are then tied to certain shares and a stockholder may not thereafter transfer his interest in that lot without also transferring the shares. Also, upon dissolution of the corporation, the bylaws must contain a provision that the stockholder holding the shares associated with a specific lot is to receive that lot in fee simple. This language, while creating a *future* real-property interest in lots assigned to stockholders under the act in situations where the corporation chooses to so assign specific lots, does not create a *present* real-property interest. Had the Legislature intended a present real-property interest, it could have used statutory

---

[25] See MCL 455.20.

[26] MCL 455.21.

language effectuating this intent rather than the language it actually used. The interpretation sought by the Madiols is contrary to the language expressed in the first sentence of MCL 455.21 as well as that in MCL 455.12 and MCL 455.14. Such an interpretation does not adhere to the rules of statutory construction.[27] Therefore, we conclude that the act, by itself, does not create a present real-property interest in lot 56 to the Madiols.

### 2. THE MADIOLS' RIGHTS UNDER THE BYLAWS

Although the Madiols do not have a present property interest in lot 56 by virtue of MCL 455.21, they do have certain rights pursuant to Article 3 of Shorewood's bylaws. Article 3, as amended in 1994, provides:

#### Rights of Stockholders

Any stockholder or stockholders owning the shares of stock to which any lot or lots are appurtenant, and upon which the Association holds no lien, shall be entitled upon complying with the rules and regulations of the Association, to the use of said lot or lots, and in common with the other members, the use of the Association, and the rules and regulations of the Board of Directors, that shall be from time to time in force.

Bylaws are generally construed in accordance with the same rules used for statutory construction.[28] Thus, we must first look at the specific language of the bylaw.[29] If the language is unambiguous, the drafters are presumed to have intended the meaning

---

[27] *Robinson, supra* at 459; *In re MCI Telecom Complaint, supra* at 414.

[28] Fletcher, *supra* at § 4195, p 792.

[29] *In re MCI Telecom Complaint, supra* at 411.

plainly expressed.[30] However, if the language is ambiguous, it should be interpreted using the "fair and natural import" of the terms in light of the subject matter.[31] Also, we must presume that every word has a meaning and should avoid any construction that would render any part of a bylaw nugatory.[32].

The plain language of Article 3 clearly indicates that a stockholder is entitled to the use of the lot attached to the stockholder's shares. Nothing in the language indicates that the corporation may exclude a stockholder from a portion of his lot, or that it may allow one stockholder to use a lot, or a portion of a lot, that is attached to the shares of another stockholder. Moreover, as Shorewood's own counsel admitted at the motion hearing, ownership of stock in the corporation entitles the holder to use a designated area, and also entitles the holder to the rights and protections that the bylaws provide. Bylaws must be reasonable in themselves as well as in their practical application.[33] In this case, Shorewood's bylaws do not provide that a stockholder has the right to use a lot, or any portion of it, assigned to another stockholder.

An examination of the remainder of the bylaws does not reveal a contrary intent. Although the language of Article 6, which governs arrearages, mentions the use of a lot or building by one other than the owner of the shares attached to the lot, the import of this language is to prohibit stockholders

---

[30] *Id.*; Fletcher, *supra.*

[31] *In re Wirsing*, 456 Mich 467, 474; 573 NW2d 51 (1998).

[32] *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992); Fletcher, supra.

[33] Fletcher, *supra* at § 4191, pp 779-780, citing *Campau v McMath*, 185 Mich App 724; 463 NW2d 186 (1990).

from leasing their lots without consent and the payment of arrearages. It does not permit the board to place one stockholder in possession of the lot or building of another. Although Article 18 provides broad authority for the board to exercise supervision and control over the lands of the association, reading this article to permit the board to exclude a stockholder from his lot would render Article 3 nugatory, a construction to be avoided.[34] Articles 27, 28, and 29, although imposing a number of use restrictions, do not touch on this issue.

Thus, although the bylaws provide the board with broad authority to control the property owned by the corporation, the bylaws, as presently written, do not permit the corporation to exclude a stockholder from his lot, or require that a stockholder grant the use of his lot to another. Although this might be within the corporation's power under the act, provided such a bylaw could be considered "reasonable" under MCL 455.12, the bylaws, as enacted, support the Madiols' position that the board acted inappropriately in attempting to require the Madiols to allow the Slatterlys to use the disputed space, or to refrain from using this portion of lot 56 themselves.

Our review of the amendment to Article 26 does not change this result, primarily because it does not directly address the issue of allowing a stockholder the right to use another's lot. Even if it were construed to do so, as discussed, the language of this amendment prevents Shorewood from applying it retroactively against the Madiols. Moreover, its reasonableness must be determined by the finder of fact

---

[34] *Altman, supra* at 635.

before it can be applied. Therefore, this amendment does not affect our analysis of this issue.

Shorewood's citation of *Highland Park* for the proposition that Shorewood holds sole authority to regulate the use of lots possessed by stockholders is not persuasive given the facts of that case. In *Highland Park*, defendant Boesker held only a leasehold interest in the property at issue, rather than a grant of the "use" of the property,[35] and he had not been excluded from his lot. In this case, Article 3 specifically provides for the use of a lot by the stockholder possessing the corresponding shares, and does not authorize the communal use of a lot assigned to a stockholder.

For these reasons, we conclude that the board's actions in restricting the Madiols from using a portion of their lot, or designating this use to the Slatterlys, violated Article 3 of Shorewood's bylaws. Therefore, we reverse the trial court's grant of injunctive relief.

### E. QUIET ENJOYMENT

The Madiols also argue that the trial court erred in denying their motion for summary disposition of Shorewood's cross-claim on the ground that allowing Shorewood to force the Madiols to allow the Slatterlys to use their lot would violate the covenant of quiet enjoyment. However, the covenant of quiet enjoyment is breached only "when the landlord obstructs, interferes with, or takes away from the tenant in *a substantial degree* the beneficial use of the leasehold."[36]

---

[35] See *Highland Park, supra* at 6-9.

[36] 49 Am Jur 2d, Landlord and Tenant, § 606, p 500 (emphasis added). See also *Grinnell Bros v Asiuliewicz*, 241 Mich 186, 188; 216 NW 388 (1927); *Royal Oak Wholesale Co v Ford*, 1 Mich App 463, 466-467; 136 NW2d 765 (1965).

In this case, we conclude that the Madiols cannot show that allowing Shorewood to exercise control over the disputed area would constitute a substantial interference with the Madiols' use of lot 56. Indeed, it is undisputed that the Madiols had enjoyed the beneficial use of lot 56 for several years before they learned that the disputed area, on which the Slatterlys and their predecessors had been parking since 1930, fell partly in lot 56. Accordingly, the trial court did not err in denying the Madiols' motion for summary disposition on this ground.

### III. THE SLATTERLYS' CROSS-APPEAL

#### A. STANDARD OF REVIEW

As noted, this Court reviews de novo the trial court's decision on a motion for summary disposition.[37]

#### B. PRESCRIPTIVE EASEMENT

The Slatterlys argue that the trial court erred by finding that they could not claim a prescriptive easement over the driveway against the Madiols, irrespective of the fact that neither party held legal title to the property.

Initially, we note that, other than a discussion of MCL 600.5801 and a single citation of this Court's opinion in *Plymouth Canton Community Crier, Inc v Prose*,[38] the Slatterlys fail to present supporting authority for any of their claims in this section of

---

[37] *Maiden, supra* at 118.

[38] *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676; 619 NW2d 725 (2000).

their appellate brief. They equate the instant situation to one where two tenants of a single property owner acquire long-term leases, but do not address the fact that they and the Madiols acquired their possessory interests in their respective lots under the act rather than under a lease agreement. The Slatterlys also maintain that one lessee can bring a claim for prescriptive easement against another lessee, but cite no authority for this proposition other than MCL 600.5801, which is the statute of limitations for claims for the recovery or possession of land.

In any event, we conclude that the trial court correctly held that the Slatterlys could not maintain a claim for a prescriptive easement against the Madiols. We have discovered no authority to support the Slatterlys' position that a lessee can obtain a prescriptive easement over the lands occupied by another lessee when the two leases are held by the same owner of real property. Indeed, the origin of the doctrine negates this theory. "An easement represents the right to use another's land for a specified purpose."[39] An easement by prescription is " 'based upon the legal fiction of a lost grant,' "[40] and results from action or inaction leading to a presumption that the "true owner" of the land, by his acquiescence, has granted the interest adversely held.[41] Therefore, by its nature, a prescriptive easement runs against the owner of the property, rather than against the one who uses it.

[39] *Plymouth Canton Community Crier, Inc, supra* at 678-679, citing *Schadewald v Brulé,* 225 Mich App 26, 35; 570 NW2d 788 (1997).

[40] *Tolksdorf v Griffith,* 464 Mich 1, 4 n 2; 626 NW2d 163 (2001) (citation omitted); *Dyer v Thurston,* 32 Mich App 341, 343; 188 NW2d 633 (1971).

[41] *Marr v Hemenny,* 297 Mich 311, 314; 297 NW 504 (1941).

In addition, the Slatterlys appear to claim an easement appurtenant to their lot rather than one in gross, that is, one that runs to them personally. In situations where the easement claimed is appurtenant, the Michigan Supreme Court has held that an owner of land cannot have an easement in his own land.[42] Thus, the Court has found that the adverse use essential to creating a prescriptive easement cannot occur when one common owner owns the dominant and servient tenements.[43]

For these reasons, we conclude that the Slatterlys cannot claim to have gained a prescriptive easement appurtenant over the disputed area when both lots are owned by Shorewood.[44] Therefore, the trial court did not err in granting the Madiols' motion for summary disposition on this claim. In light of this decision, we need not reach the Slatterlys' claim that their use of the disputed space satisfied all the elements necessary to acquire a prescriptive easement, or their claim that they were not precluded from bringing suit due to the doctrine of ouster, or their request that we direct the trial court to enter an order requiring Shorewood's board to modify the share certificates of the Madiols and the Slatterlys to prove that the disputed space is "appurtenant" to the Slatterlys' shares.

---

[42] *Rusk v Grande*, 332 Mich 665, 669; 52 NW2d 548 (1952); *Hasselbring v Koepke*, 263 Mich 466, 478; 248 NW 869 (1933).

[43] *Morgan v Meuth*, 60 Mich 238, 254; 27 NW 509 (1886).

[44] While the Slatterlys may have a claim for a license to use the disputed area, see *Kitchen v Kitchen*, 465 Mich 654, 658-659; 641 NW2d 245 (2002); *Forge v Smith*, 458 Mich 198, 210-211; 580 NW2d 876 (1998), the Slatterlys do not raise this claim on appeal.

IV. CONCLUSION

To summarize, we conclude that the trial court erred in applying the amended Article 26 retroactively. We also note that the trial court erred by deciding as a matter of law that Shorewood's enactment of the amendment of Article 26 of the bylaws, and the additional actions of the board in ordering the Madiols to remove their landscaping pursuant to the bylaw, were reasonable under the circumstances. Further, although we conclude that the act does not create a present real-property interest in lot 56 for the Madiols, we hold that the board's actions in restricting the Madiols from using a portion of their lot or designating this use to the Slatterlys violated Shorewood's bylaws, and we therefore reverse the trial court's grant of injunctive relief.

We also conclude that the trial court did not err in denying the Madiols' motion for summary disposition of Shorewood's cross-claim, because the Madiols cannot show that allowing Shorewood to exercise control over the disputed area would constitute a substantial interference with the Madiols' use of lot 56, and thus a breach of the Madiols' right to quiet enjoyment. Moreover, we conclude that the trial court correctly held that the Slatterlys could not maintain a claim for a prescriptive easement against the Madiols, because both lots are owned by Shorewood.

Reversed in part, affirmed in part, and remanded for further proceedings not inconsistent with this opinion with respect to the Madiols' claims against Shorewood and the Slatterlys. We do not retain jurisdiction.