# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD P. HILLENBRAND,

Plaintiff-Appellant,

v

CHRIST LUTHERAN CHURCH OF BIRCH RUN,

Defendant-Appellee,

and

LUTHERAN CHURCH-MISSOURI SYNOD,

Amicus Curiae.

FOR PUBLICATION
September 15, 2015
9:00 a.m.

No. 319127
Saginaw Circuit Court
LC No. 13-019736-CK

Before: WILDER, P.J., and SERVITTO and STEPHENS, JJ.

STEPHENS, J.

Plaintiff appeals as of right from the opinion and order of the trial court granting defendant's motion for summary disposition under MCR 2.116(C)(4). We affirm.

## I. BACKGROUND

Defendant is a Lutheran church. Plaintiff served as pastor at defendant church for seven years, from 2005 until his employment was terminated in 2012. In 2013, plaintiff filed a complaint against defendant that alleged defendant, as a member of The Lutheran Church – Missouri Synod ("LCMS"), wrongfully terminated plaintiff's employment in violation of LCMS's constitution. Plaintiff requested that the trial court enjoin defendant's termination of plaintiff as its pastor, order defendant to reinstate plaintiff as its pastor, order defendant to remove any reference to defendant's termination of plaintiff as its pastor, and order the restoration of plaintiff's rights under his employment agreement with defendant.

According to plaintiff, LCMS's constitution required the employment dispute to be presented to an LCMS Dispute Resolution Panel ("hearing panel" or "panel"). A hearing was held before such a panel on August 17, 2012 and August 18, 2012. Defendant withdrew its membership from LCMS and stated it would not participate in the hearing. The panel ruled that defendant's decision to terminate plaintiff's employment as its pastor "should be reviewed and

-1-

revised." The panel further concluded that plaintiff was entitled to compensation from the date that defendant terminated plaintiff's employment as its pastor, March 11, 2012, "until said time when Plaintiff receives and, if he so chooses as led by the Holy Spirit, accepts a call to another congregation," in the amount of $59,800 as an annual salary, as well as $12,500 for additional out-of-pocket expenses related to health insurance, retirement benefits, and costs related to the hearing.

In lieu of filing an answer to plaintiff's complaint, defendant filed a motion for summary disposition under MCR 2.108(B), MCR 2.116(C)(4), and MCR 2.116(C)(7). Defendant asserted that it was entitled to summary disposition because the Ecclesiastical Abstention Doctrine prevented courts from determining whether a church violated its own policies and procedures. It also argued that it was entitled to summary disposition because, as a common-law arbitration, its agreement to be bound by a hearing before an LCMS panel was unilaterally revocable. Plaintiff filed a response to defendant's motion, arguing that because LCMS was hierarchical, as opposed to congregational, the hearing before the panel was binding and should be enforced as such.

After a hearing, the trial court issued a written opinion and order granting defendant's motion for summary disposition. The trial court found that LCMS was congregational and not hierarchical. The trial court found that the plain language of LCMS's 1983 resolution created a hierarchical relationship only as to the "initial call to become a pastor and not for the decision to terminate a call." The trial court further found that even if the 1983 resolution language applied to a pastor's termination, the only remedy available would be to revoke defendant's membership in LCMS. Lastly, the trial court found that LCMS did not have authority to bind defendant during the hearing because defendant was no longer an LCMS member and had withdrawn its consent prior to the hearing. Plaintiff motioned the court for reconsideration of its opinion, but was denied.

This appeal followed. LCMS was granted leave to file an amicus curiae brief.[1]

## II. SUMMARY DISPOSITION

Plaintiff maintains that the trial court's grant of summary disposition to defendant was erroneous because LCMS is a hierarchical organization. We disagree.

"[This Court] review[s] the trial court's grant or denial of summary disposition de novo." *Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 574; 603 NW2d 816 (1999). A trial court's interpretation of an organization's constitution and bylaws is also reviewed de novo. *Slatterly v Malidol*, 257 Mich App 242, 250-251, 256; 668 NW2d 154 (2003). The Court reviews a trial court's findings of fact for clear error. *City of Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221, reh den 481 Mich 899 (2008). "A trial court's factual findings are clearly erroneous only when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id.* (Citation and quotation marks omitted).

---

[1] *Hillenbrand v Christ Lutheran Church of Birch Run*, unpublished order of the Court of Appeals, May 28, 2014 (Docket No. 319127).

Summary disposition is appropriate under MCR 2.116(C)(4) when a court lacks jurisdiction over the subject matter of an action. When reviewing such a motion, this Court "must determine whether the pleadings demonstrate that the defendant was entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact." *Manning v Amerman*, 229 Mich App 608, 610; 582 NW2d 539 (1998), lv den 459 Mich 948 (1999).

"[T]he First and Fourteenth Amendments to the United States Constitution protect freedom of religion by forbidding governmental establishment of religion and by prohibiting governmental interference with the free exercise of religion." *Bennison v Sharp*, 121 Mich App 705, 712; 329 NW2d 466 (1982). "Both Religion Clauses bar the government from interfering with the decision of a religious group to fire one of its members." *Hosanna-Tabor Evangelical Lutheran Church and Sch v EEOC*, ___ US ___; 132 S Ct 694, 702; 181 L Ed 2d 65 (2012). The United States Supreme Court has confirmed "that it is impermissible for the government to contradict a church's determination of who can act as its ministers." *Id*. at 704.

Under the Ecclesiastical Abstention Doctrine, "where the facts indicate that a denomination is hierarchical, 'civil courts may not redetermine the correctness of an interpretation of canonical text or some decision relating to the government of the religious polity,' . . . but must defer to the resolution of those issues 'by the highest court of a hierarchical church organization[.]' " *Lamont Community Church v Lamont Christian Reformed Church*, 285 Mich App 602, 616; 777 NW2d 15 (2009), quoting *Smith v Calvary Christian Church*, 462 Mich 679, 684; 614 NW2d 590 (2000); see also *Bennison*, 121 Mich App at 713. "[W]hen a denomination is determined to be hierarchical, trial courts have jurisdiction to enter a judgment, but the judgment must resolve the matter consistent with any determinations already made by the denomination." *Id*.

"The determination of whether a denomination is hierarchical is a factual question." *Id*. at 615, citing *Calvary Presbyterian Church v Presbytery of Lake Huron of the United Presbyterian Church*, 148 Mich App 105, 113; 384 NW2d 92 (1986). A denomination is hierarchical if it "is but a subordinate part of a general church in which there are superior ecclesiastical tribunals with a more or less complete power of control . . . ." *Bennison*, 121 Mich App at 720. "A denomination is organized in a hierarchical structure when it has a central governing body which has regularly acted within its powers while the looser congregational structure generally has all governing powers and property ownership remaining in the individual churches." *Lamont*, 285 Mich App at 618 (citation and quotation marks omitted). Stated differently, a church organization is congregational if it is self-governing; a church organization is hierarchical if it is "part of *and governed by* a larger organization." *Little v First Baptist Church, Crestwood*, 475 US 1148, 1148; 106 S Ct 1802; 90 L Ed 2d 347 (1986) (emphasis added).

The trial court found it lacked jurisdiction over the subject matter of this lawsuit under MCR 2.116(C)(4) because LCMS was congregational. Our review of the trial court's grant of summary disposition, therefore, begins with an examination of whether LCMS is hierarchical or congregational.

According to defendant's articles of association, its members "shall worship and labor together according to the discipline, rules and usage of [LCMS] in the United States of America from time to time authorized and declared by the delegate convention."

Article VII of LCMS's constitution, entitled "Relation of the Synod to its Members," states as follows:

> 1. In its relation to its members the Synod is not an ecclesiastical government exercising legislative or coercive powers, and with respect to the individual congregation's right of self-government it is but an advisory body. Accordingly, no resolution of the Synod imposing anything upon the individual congregation is of binding force if it is not in accordance with the Word of God or if it appears to be inexpedient as far as the condition of the congregation is concerned.

> 2. Membership of a congregation in the Synod gives the Synod no equity in the property of the congregation.

Article XIII, "Expulsion from the Synod," ¶ 1, provides that "[m]embers who act contrary to the confession laid down in Article II and to the conditions of membership laid down in Article VI or persist in an offensive conduct shall, after previous futile admonition, be expelled from the Synod." Article XIV grants LCMS the right to "adopt bylaws that are consistent with and do not contradict the Constitution of the Synod, which controls and supersedes such bylaws and all other rules and regulations of the Synod."

Under § 1.10.1.1 of LCMS's bylaws, "[t]he use of the Synod's conflict resolution procedures shall be the exclusive and final remedy for those who are in dispute." Section 1.10.2 states, in part, as follows regarding the conflict resolution procedures:

> It shall be the exclusive remedy to resolve such disputes that involve theological, doctrinal, or ecclesiastical issues except those covered under Bylaw sections 2.14-2.17 and except as provided in Bylaw 1.10.3. It is applicable whether the dispute involves only a difference of opinion without personal animosity or is one that involves ill will and sin that requires repentance and forgiveness. No person or agency to whom or to which the provisions of this dispute resolution process are applicable because such person or agency is a member of the Synod may render these provisions inapplicable by terminating that membership.

Section 1.10.3, however, indicates that, "[t]his chapter provides evangelical procedures to remedy disputes only and does not set forth procedures for expulsion from membership." It also indicates that "[w]hile Christians are encouraged to seek to resolve all their disputes without resorting to secular courts, this chapter does not provide an exclusive remedy for . . . [d]isputes arising under contractual arrangements of all kinds". Under § 1.10.7.4, ¶ (d), the final decision of a dispute resolution hearing panel is "binding upon the parties."

LCMS's 1983 resolution, entitled "To Reaffirm Essential Congregational Polity of the Synod," states that "[t]he word 'hierarchical' is repugnant to Missouri Synod Lutherans because etymologically it refers to 'rule by the priesthood' " and is defined differently by civil courts than

theology. It continues, stating that "[i]n past instances the Synod has utilized the legal nomenclature 'hierarchical' in legal proceedings in order to preserve to member congregations and others who associate together within the Synod the right to resolve disputes freely in accordance with established synodical procedures."

The LCMS resolution then states as follows:

>*Resolved*, That The Lutheran Church – Missouri Synod reaffirms that its synodical polity is essentially and principally congregational in nature and therefore is ordinarily referred to as a congregational polity; and be it further

>*Resolved*, That the Synod acknowledges that under the definition and application of the word "hierarchical" in civil law there are aspects in the relationships within the Synod between and among congregations (e.g. Article II, Confession; the calling of certified and endorsed pastors only; agreements to abide by adjudicatory procedures and their final determinations) which under civil law may apply, express, or evidence what the courts regard as hierarchical dimensions; and be it further

>*Resolved*, That, believing that Scripture (1 Cor. 6) requires that we make every effort to avoid disputes or to resolve them internally when they do arise, of the two constitutional methods for resolving church disputes by the civil courts, the Synod favors the "neutral principles of law" method whenever it can be applied, and that when neutral principles cannot be applied to resolve a particular controversy, the Synod declares that it is able and willing to resolve disputes internally; and be it further

>*Resolved*, That while we believe the courts should recognize that there are church polities other than "congregational" and hierarchical," unless and until courts do so, the present status of case law compels us to use certain legal terminology; and be it finally

>*Resolved*, That with the previously outlined explanation, the Synod declares itself as satisfied with the procedures heretofore followed by the Synod in instances involving these issues.

Although its resolution and bylaws both apparently attempt to create an "exclusive," "final," and "binding" dispute resolution process, LCMS's constitution unequivocally states that it "is not an ecclesiastical government exercising legislative or coercive powers, and with respect to the individual congregation's right of self-government it is but an advisory body." LCMS has made it clear through its constitution, bylaws, and resolution that individual congregations, including defendant, are self-governing. There is no question that at the time plaintiff was removed as defendant's pastor, defendant was "part of" LCMS; however, LCMS's constitution, its controlling document, expressly indicates that defendant is not "governed by" LCMS. See *Little*, 475 US at 1148. Based on the plain reading of LCMS's constitution, LCMS "is but an advisory body" and not a governing body. Therefore, LCMS is congregational in nature.

Plaintiff and LCMS ask this Court to find LCMS to be a hybrid entity: generally congregational, but hierarchical in nature regarding confession, ministerial call, and its dispute resolution process. We decline to do so. We conclude that we are bound by LCMS's unequivocal statement in its constitution that it "is not an ecclesiastical government exercising legislative or coercive powers, and with respect to the individual congregation's right of self-government it is but an advisory body." LCMS's constitution provides that it "controls and supersedes such bylaws and all other rules and regulations of the Synod." Therefore, even if the resolution indicates that LCMS has hierarchical dimensions, such an indication is in direct conflict with and superseded by the constitution's statement that LCMS does not affect an individual congregation's right of self-government.

LCMS's contention that its resolution is consistent with its constitution rests on the conclusory statement that its "Commission on Constitutional Matters" decided that it was. In short, LCMS's own determination is not binding on this Court if this Court "could enforce [the documents] without engaging in a searching and therefore impermissible inquiry into church polity . . . ." *Lamont*, 285 Mich App at 617 (citation omitted).

Further, LCMS's constitution declares that "no resolution of the Synod imposing anything upon the individual congregation is of binding force . . . if it appears to be inexpedient as far as the condition of the congregation is concerned." Stated differently, LCMS's resolutions are not binding on individual congregations if the individual congregations deem them "inexpedient." This statement clearly leaves individual congregations open to adopt or disregard LCMS's resolutions based on that congregation's "condition." Interpreting this as advisory, rather than binding, is consistent with LMCS's self-imposed "advisory body" label.

Contrary to plaintiff and LCMS, the trial court refrained from delving into the polity of the church. Courts are permitted to enforce a denomination's constitutional provisions only if those constitutional provisions are expressed in a way that would not require courts to make an impermissible inquiry into church polity. *Id*. When examining religious documents, "a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts . . . ." *Jones v Wolf*, 443 US 595, 604; 99 S Ct 3020; 61 L Ed 2d 775 (1979). Here, because the plain language of LCMS's constitution expressly indicates that it is not a governing body. It is for this reason that our Court need not "accept the interpretation provided by the denomination." *Lamont*, 285 Mich App at 617. We have merely applied the general principles of contract law to this situation. See, e.g., *Madiol*, 257 Mich App at 256 ("Bylaws are generally construed in accordance with the same rules used for statutory construction. Thus, we must first look at the specific language of the bylaw. If the language is unambiguous, the drafters are presumed to have intended the meaning plainly expressed.").

It is worth noting, however, that Article VIII ("Separation") of defendant's revised constitution states as follows:

> If, at any time, a separation shall take place on account of doctrines, the property of the congregation and all benefits therewith connected shall remain with those communicant members who continue to adhere in confession and practice of Article III of this constitution. In event of any disagreement that may lead to possible separation, the final decision relative to Article III shall rest with

-6-

the Board of Appeals of the Lutheran Church-Missouri Synod. In the event the congregation shall totally disband, the property and all rights connected therewith shall be transferred to the Michigan District of the Lutheran Church-Missouri Synod.

However, Article X ("Synodical Membership"), again in the revised constitution, specifically states the following:

> This congregation shall be affiliated with the Lutheran Church-Missouri Synod as long as the confessions and constitution of said Synod are in accord with the confession and constitution of this congregation as laid down in Article III.

> This congregation shall, to the best of its ability, collaborate with said Synod and assist it in effecting all sound measures intended for the building up of the Kingdom of God.

When considering Article XIII in relation to the document as a whole, it seems apparent that defendant "affiliated" itself with LCMS, but did not subordinate itself in a hierarchical relationship. See *AFSCME Council 25 v State Employees' Retirement System*, 294 Mich App 1, 24; 818 NW2d 337, lv den 490 Mich 935 (2011) ("Every provision of the constitution must be interpreted in light of the document as a whole, and no provision should be construed to nullify or impair another.")

Plaintiff relies heavily on *Hosanna-Tabor Evangelical Lutheran Church & Sch v EEOC*, *supra*. In that case, a Michigan Lutheran Church and School, which was also a member of LCMS, terminated a "called" teacher's employment after she began suffering from and was diagnosed with narcolepsy and missed approximately seven months of teaching. *Id*. at 700. The reasons given for her termination were insubordination, disruptive behavior, damage to her working relationship with the church and school, and threatening to take legal action. *Id*. The teacher filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging that her employment was terminated in violation of the Americans with Disabilities Act, 43 USC 12101 *et seq*. *Hosanna-Tabor*, 132 S Ct at 700. The EEOC and the teacher sued the church and school requesting that she be reinstated to her former position. *Id*.

The issue before the United States Supreme Court was whether the teacher was a minister, which would entitle the church and school to protection under the "ministerial exception" of the Civil Rights Act, 42 USC 2000e *et seq*., and other employment discrimination laws. *Hosanna-Tabor*, 132 S Ct at 705. The Court found that she was; therefore, the Court concluded, "the First Amendment requires dismissal of this employment discrimination suit against her religious employer." *Id*. at 709. The Court explained that whether it reinstated the teacher to her previous position or ordered compensatory and punitive damages, "[s]uch relief would depend on a determination that Hosanna-Tabor was wrong to have relieved [the teacher] of her position, and it is precisely such a ruling that is barred by the ministerial exception." *Id*. The Supreme Court explained that "[b]y requiring the Church to accept a minister it did not want, such an order would have plainly violated the Church's freedom under the Religion Clauses to select its own ministers." *Id*. Plaintiff contends that *Hosanna-Tabor* directly controls the outcome of this case in his favor.

In *Hosanna-Tabor*, the Supreme Court was faced with determining whether a religious organization's freedom to select its ministers was implicated by an employment discrimination suit, which it held that it was. *Hosanna-Tabor*, 132 S Ct at 705. In the instant case, however, plaintiff is asking this Court to do exactly what the United States Supreme Court said courts should not, i.e., impose an unwanted minister on a church:

> The members of a religious group put their faith in the hands of their ministers. Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions. [*Id*. at 706.]

The United States Supreme Court, citing *Serbian Eastern Orthodox Diocese for the United States of America and Canada v Milivojevich*, 426 US 696; 96 S Ct 2372; 49 L Ed 2d 151 (1976), expressly refused to determine whether the church, not LCMS or the employee, followed the required procedures in terminating the teacher's employment. *Hosanna-Tabor*, 132 S Ct at 705. The Court made no reference to LCMS's position on whether the teacher's employment was properly terminated. In the instant case, plaintiff is asking this Court to determine that defendant failed to follow the proper procedures in terminating his employment, and to reinstate him through that process based on LCMS's position. This would involve analyzing the church's decision to terminate plaintiff's employment as its pastor in the exact manner that *Hosanna-Tabor* forbids.

In acknowledging that this is a complicated question, we conclude that the trial court did not err in concluding that LCMS is congregational in nature and therefore, properly granted summary disposition to defendant.

### III. THE EFFECT OF THE DECISION OF THE DISPUTE RESOLUTION PANEL

Plaintiff also argues that the trial court erred in finding that defendant could withdraw from the Synod because defendant's withdrawal nullified the ruling of the decision of the dispute resolution panel. Because LCMS's bylaws prohibit its members from terminating their membership in a manner that renders a decision of the dispute resolution panel inapplicable, we agree.

This Court reviews a trial court's interpretation of an organization's bylaws de novo. *Slatterly*, 257 Mich App at 250-251. Review of a trial court's findings of fact is for clear error. *Ambassador Bridge Co*, 481 Mich at 35. "A trial court's findings of fact are clearly erroneous only when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*.

As discussed, bylaw drafters are presumed to have intended the meaning plainly expressed. *Slatterly*, 257 Mich App at 255-256. This Court "presume[s] that every word has a meaning and should avoid any construction that would render any party of a bylaw nugatory." *Id*. at 256.

Section 1.10.2 of LCMS's bylaws states the following: "No person or agency to whom or to which the provisions of this dispute resolution process are applicable because such person or agency is a member of the Synod may render these provisions inapplicable by terminating that membership." In a letter dated June 18, 2012, defendant informed LCMS that it was withdrawing its membership effective that day "due to the politics involved with the Missouri Synod – Michigan District" and because it wanted "a pastor that cares about them." In a letter dated August 8, 2012, defendant informed LCMS that it would not be attending and was not agreeing to be bound by any dispute resolution hearing conducted by LCMS.

The plain language of Bylaw section 1.10.2 clearly indicates that an LCMS member cannot terminate its membership in a way that renders the dispute resolution hearing process inapplicable. Here, two months before the dispute resolution hearing was scheduled to take place, defendant terminated its membership and refused to attend the dispute resolution hearing. The contents of the June 18 letter appear to reference the issue of plaintiff's employment. As defendant was not permitted to render the dispute resolution hearing inapplicable in that manner under § 1.10.2, its doing so was improper. Therefore, the trial court erred in any finding that permitted defendant to do so.

Nevertheless, any decision from the dispute resolution panel would have been advisory and not binding on the parties as plaintiff argues.

LCMS is "but an advisory body" and is not a legislative or coercive body that affects its individual congregations' right to self-government. Any recommendations it, or its individual committees including its dispute resolution panel, make are merely advisory under its constitution, and each congregation may or may not choose to follow them. The panel's own wording further indicates that its decision was advisory and not binding. In concluding whether the panel had authority to act in this matter, it stated "that it does have authority to act in this matter to either uphold the action of the congregation in removing [plaintiff] or *advise* the congregation to review and revise its decision." Then, in determining whether defendant "should . . . be *advised* to review and revise its decision," the dispute resolution panel concluded that defendant's decision "*should* be reviewed and revised." Lastly, in determining what "restitution" was owed from defendant to plaintiff, the panel concluded by stating, in part, as follows: "While it is beyond the purview and scope of this Panel to determine every such damage, we did conclude that, on the basis of the documentary evidence, we could *advise* to an amount of restitution . . ." (emphasis added). The record supports the trial court's finding that the panel's decision was merely advisory. The very most that the panel's decision would have done was to require defendant to "revisit and revise" its decision to remove plaintiff as its pastor. It follows that defendant would still be permitted to choose not to abide by the panel's advice.

Because LCMS's constitution and bylaws, as well as the hearing panel's decision itself, are expressly advisory in nature, the trial court did not err in concluding that the dispute resolution panel's decision was advisory.

-9-

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Kurtis T. Wilder
/s/ Deborah A. Servitto