*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NANCY K. GLASSER, as Trustee of the NANCY K. GLASSER TRUST, NANCY GLASSER, JOSEPH C. SCOTT, MARIA F. SCOTT, EDWARD LABARGE, MAUREEN LABARGE, RICHARD B. GLASSER, as Trustee of the RICHARD B. GLASSER TRUST, and LEANN GLASSER, as Trustee of the LEANN GLASSER TRUST,

Plaintiffs/Counterdefendants-
Appellants,

v

MICHAEL P. SCOTT and JANE SCOTT,

Defendants/Counterplaintiffs-
Appellees.

UNPUBLISHED
October 20, 2022

No. 357166
Otsego Circuit Court
LC No. 19-017588-CH

Before: MARKEY, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Plaintiffs and counterdefendants—Nancy K. Glasser, as trustee of the Nancy K. Glasser Trust; Nancy Glasser, individually (NG); Joseph C. Scott (Joseph); Maria F. Scott; Edward LaBarge; Maureen LaBarge; Richard B. Glasser (RG), as trustee of the Richard B. Glasser Trust; and LeAnn Glasser, as trustee of the LeAnn Glasser Trust—appeal by right an extensive and thoughtful opinion and order issued by the trial court following a bench trial. The trial court ruled that plaintiffs did not have an easement over part of a circular driveway located on the property of defendants and counterplaintiffs, Michael Scott (Michael) and Jane Scott (Jane). Plaintiffs challenge various rulings made by the trial court in its opinion and order, along with disputing an earlier decision by the court on a motion for summary disposition. At the summary disposition hearing the trial court ruled that only plaintiff NG was entitled to use a certain 1959 express easement, which did not correspond to the circular driveway. On appeal, plaintiffs argue that the trial court improperly considered hearsay testimony at trial, erred by concluding that no easement by prescription existed over the circular driveway, and wrongfully determined that the 1959 express easement applied *only* to NG. We disagree with these arguments and affirm.

-1-

# I. BASIC FACTS

In the 1880s, a man with the surname "Hallenius" immigrated to the United States and acquired a 150-acre farm bordering Lake 27 in Elmira, near Gaylord in Otsego County. The land was eventually divided among family members. Vila Hallenius (Vila), who is now deceased, ended up owning a large portion of the property east of Lake 27. Of import to this case, after the death of her brother Bud Hallenius, Vila became the owner of property north of lot 10 as identified on a survey of "Hallenius Estates."[1] She sold sections of this property (lots 11, 12, and 13) to the Glasser family, and in 1996, Joseph bought a portion of lot 11[2] on which a house, built by the Glassers in approximately 1992, was situated. This is Joseph's current vacation home, which he often uses as a rental property. In this opinion, we will refer to this house on a portion of lot 11 as "the Glasser/JS House."

Very near the Glasser/JS House, but a bit to the south and located on lot 10, is a house built in approximately 1963; the home is currently owned by Michael and Jane. For ease of reference, it will be referred to as "the Scott Lake House." The Scott Lake House and its curtilage had been owned by Everette Scott (Everette) and Mary Scott (Mary), who were married to each other and who are both now deceased. Mary, previously known as Mary Hallenius, was Vila's sister. After Everette's death, Mary, in 1990, transferred the Scott Lake House to the couple's son, Gene Scott (Gene), his wife, Nancy Scott (Nancy), and Gene and Nancy's six children—among whom are plaintiff Joseph and defendant Michael. In 1992, the house was transferred into the Scott Family Trust (SFT), whose trustees and beneficiaries included Joseph and Michael. Michael and Jane purchased the Scott Lake House from the SFT in 2006.

This appeal involves, in large part, a circular driveway constructed around the time that the Scott Lake House was built. The circular driveway is situated on portions of lot 10 and lot 11 and can service both the Scott Lake House and the Glasser/JS House. In 2016, Joseph upgraded the Glasser/JS House and increased the frequency of his rentals of the house. Michael and Jane were concerned about the volume of vehicles on the circular driveway, so in 2017, they blocked it (within the confines of their property on lot 10) on both its western and eastern sides. Joseph acquiesced below to the western-side blockage, but claimed that he had an easement by prescription over Michael and Jane's property in relation to the use of the eastern side of the circular driveway. Use of the eastern side allows one to reach the Glasser/JS House from the south by going northward on Red Finch Rd., a private road. But the Glasser/JS House can also be accessed from the north by going southward from another private road, Eagle Landing Trail, without any use of defendants' land. The trial court concluded that there was no prescriptive easement allowing Joseph or his guests/tenants to use any portion of the circular driveway that sits on Michael and Jane's property. As noted, the court had earlier ruled in connection with a

---

[1] This survey was never recorded, but it was frequently used as a reference below and is also frequently employed as such on appeal. The "lots" listed in the survey were not necessarily sold as whole parcels; some were subdivided.

[2] The property is owned jointly by Joseph and his wife, plaintiff Maria F. Scott. But she did not testify at trial. For ease of reference, we will generally discuss the property simply in connection with Joseph.

-2-

summary disposition motion that only plaintiff NG could make use of a 1959 easement that was unrelated to the circular driveway. The other plaintiffs aside from Joseph and his wife also own land north of lot 10 and similarly claimed an entitlement by prescriptive easement to use the circular driveway. The trial court likewise rejected their claims.

## II.  ANALYSIS

### A.  ADMISSION OF ALLEGED HEARSAY EVIDENCE

Plaintiffs first argue that the trial court erred by allowing the admission of hearsay statements elicited during Nancy's de bene esse deposition testimony.

The decision to admit evidence is reviewed for an abuse of discretion. *Barnett v Hidalgo*, 478 Mich 151, 158-159; 732 NW 2d 472 (2007). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). "[W]hen the trial court's decision to admit evidence involves a preliminary question of law, the issue is reviewed de novo, and admitting evidence that is inadmissible as a matter of law constitutes an abuse of discretion." *Barnett*, 478 Mich at 159.

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is not admissible except as provided by" the rules of evidence. MRE 802.

The statements plaintiffs challenge on appeal relate to the subject of permission to use the circular driveway. Nancy stated that Gene built the Scott Lake House for his parents, Everette and Mary, in 1963 and that the circular driveway was also constructed in 1963. Nancy recalled sitting at a table with Gene, Vila, Everette, and Mary when construction plans were being discussed. Nancy asserted that during this meeting, the discussion turned to the installation of the circular driveway. Nancy indicated that Vila was instrumental in giving the names of local tradespeople and wanted some trees on her property, i.e., property north of lot 10, to be removed during the building process. Nancy claimed that Vila said, " 'You can use our property[.]' " According to Nancy, "Everette and Mary said, 'Well, you have permission, you know, to use our property,' and we had permission then to use hers. It was very reciprocal. It was a mutual situation." Nancy later observed that "Gene built the [Scott Lake House] in 1963" and that the circular driveway "obviously has been traveled." She reiterated that mutual permission was granted to use the other's land. Nancy testified that Vila was never told that she could not use the circular driveway. She also contended that Vila did not take part in maintaining the driveway and that Everette paid for its installation.

The trial court concluded that the out-of-court statements regarding permission as testified to by Nancy were admissible because they were not offered to prove the truth of the matter asserted but rather to show the effect on the listener. The court explained:

> In other words, it demonstrates that any later claim either by Vila or by Everette or Mary Scott could be defeated to the extent that those persons claimed that they were acting in a hostile way . . . as it related to the other's property. So the

effect on the listener . . . is the most important part of the dialogue and the reason why it's being admitted. It proves that there's a lack of hostility or claim of right . . . .

Plaintiffs challenge the trial court's ruling. "An out-of-court statement introduced to show its effect on a listener, as opposed to proving the truth of the matter asserted, does not constitute hearsay . . . ." *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 222 (2014). Such statements are "not offered for a hearsay purpose because [their] value does not depend upon the truth of the statement[s]." *People v Lee*, 391 Mich 618, 642; 218 NW2d 655 (1974).

We agree with the trial court because even if Vila only believed she had permission to use that portion of the circular driveway on lot 10, it would destroy the element of hostility, which we discuss later in this opinion. But throughout the case the parties focused on actual permission, including defense counsel in closing arguments. The out-of-court statements were used, in part, to prove that permission actually existed. At any rate, even if we assume that the statements constituted hearsay, they were admissible because an exception applied.

MRE 803(3) excludes from the rule against hearsay the following:

A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The trial court ruled that any statement about permission fit within the exception under MRE 803(3) for a then-existing mental condition because it related to a plan or intent relative to the circular driveway.

The out-of-court statements by Everette and Mary that Vila had permission to use their property were statements of "the declarant's[, i.e., Everette or Mary's,] then existing state of mind" in that they related to the declarant's "intent" and "plan" at the very moment of the making of the statement. See MRE 803(3). The same rationale applies to Vila's statement that the others had permission to use the planned circular driveway to be situated partly on her land. The trial court did not abuse its discretion or otherwise err by relying on MRE 803(3) to admit Nancy's testimony regarding the statements. In light of our ruling, it is unnecessary for us to analyze additional rules of evidence discussed by the parties and the trial court on this matter.

## B. PRESCRIPTIVE EASEMENT

Plaintiffs contend that the trial court erred by concluding that they did not have a prescriptive easement to use that part of the circular driveway existing on lot 10.

The factual findings of the trial court in this case are reviewed for clear error. MCR 2.613(C); *Grand Rapids v Green*, 187 Mich App 131, 136; 466 NW2d 388 (1991). MCR 2.613(C) states that "[f]indings of fact by the trial court may not be set aside unless clearly erroneous" and that "[i]n the application of this principle, regard shall be given to the special opportunity of the

-4-

trial court to judge the credibility of the witnesses who appeared before it." "Generally speaking, factual findings are clearly erroneous if there is no evidence to support them or there is evidence to support them but this Court is left with a definite and firm conviction that a mistake has been made." *A & M Supply Co v Microsoft Corp*, 252 Mich App 580, 588; 654 NW2d 572 (2002) (quotation marks and citation omitted).

In *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 211; 912 NW2d 161 (2018), our Supreme Court stated:

> [I]n order for plaintiff to successfully establish a prescriptive easement, plaintiff must show clear and cogent proof of possession that is actual, continuous, open, notorious, hostile, and uninterrupted for the relevant statutory period. The possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally, and with the purpose to assert a claim of title adversely to his, so that if the true owner remains in ignorance it is his own fault. [Quotation marks, citations, and emphasis omitted.]

"A party may 'tack' on the possessory periods of predecessors in interest to achieve this fifteen-year period by showing privity of estate." *Killips v Mannisto*, 244 Mich App 256, 259; 624 NW2d 224 (2001) (addressing a claimed prescriptive easement).

In *Wilkinson v Hutzel*, 142 Mich 674, 676-677; 106 NW 207 (1906), the Court noted that mutually-agreed shared use of a driveway does not establish hostile use. And in *Banach v Lawera*, 330 Mich 436, 440-441; 47 NW2d 679 (1951), the Supreme Court stated, "It has been repeatedly held by this Court that permissive use of a driveway, no matter how long continued, will not result in an easement by prescription."

In this case, the trial court explicitly found Nancy to be a credible witness and accepted her testimony that use of the circular driveway by Vila, starting in 1963, was permissive and mutual. The court stated that permissive use destroyed any possible hostile use. Given our conclusion on the hearsay issue, we hold that the trial court's finding of permissive use was not clearly erroneous; instead, it was supported by ample evidence, i.e., Nancy's testimony and also the close relationship between the various relatives. The overall record additionally makes clear that all persons involved with the properties peacefully and without any hostility whatsoever shared in the use of the circular driveway up until 2017. And Joseph admitted at trial that he had no evidence to contradict testimony that Everette gave Vila permission to use the circular driveway.

Plaintiffs contend that any permissive use ended when Mary sold her interest in the Scott Lake House in 1990. But Mary deeded the house in 1990 to Gene, Nancy, and *Gene and Nancy's children*, including Joseph, and then, on July 19, 1992, the house was deeded to the SFT, of which Joseph was a trustee and beneficiary. When the SFT sold the house to Michael and Jane in 2006, Joseph was a signatory because of his interest in the SFT. The 2006 deed made no reference to any easements across the circular driveway. Joseph admitted that he held an interest in the SFT. And he acknowledged that he lived in the Scott Lake House for 8 to 10 months while the home was in the trust. Any use by Joseph of that part of the circular driveway located on lot 10 after the conveyance by Mary in 1990 and through 2006 was clearly "permissive," considering that Joseph

himself was one of the owners of lot 10. As stated in *Slatterly v Madiol*, 257 Mich App 242, 261; 668 NW2d 154 (2003), "an owner of land cannot have an easement in his own land."

And even if one were to concede hostile, notorious, and continuous use of the area in dispute beginning at the time of the conveyance to Michael and Jane, which terminated Joseph's interest in lot 10, the blocking of the driveway occurred in 2017, only 11 years afterward. Thus, the question of whether Joseph had acquired an easement by prescription over the eastern portion of the circular driveway that is situated on lot 10 is rather easily resolved in the negative.

The parties discuss whether the burden of proof should have been shifted to defendants on the basis of caselaw indicating that after long periods of use, the defendant bears the burden of showing that use was permissive. See, e.g., *Marlette Auto Wash*, 501 Mich at 207. But the trial court stated that *even if* defendants had the burden to establish permissive use, they clearly did so. This finding by the court was not clearly erroneous in light of the evidence presented at trial.

Similarly, the parties discuss whether the land in question was "wild and unenclosed." In *Du Mez v Dykstra*, 257 Mich 449, 451; 241 NW 182 (1932), our Supreme Court observed:

> One may acquire a right of way by prescription over wild and uninclosed lands. But, while use alone may give notice of adverse claim of inclosed premises, the weight of authority is that it raises no presumption of hostility in the use of wild lands. This distinction is in recognition of the general custom of owners of wild lands to permit the public to pass over them without hindrance. The custom had been particularly general as to logging roads over timber lands until the carelessness of hunters and campers produced such fire hazards that the protection of timber required the permission to be circumscribed. The tacit permission to use wild lands is a kindly act which the law does not penalize by permitting a beneficiary of the act to acquire a right in the other's land by way of legal presumption, but it requires that he bring home to the owner, by word or act, notice of a claim of right before he may obtain title by prescription.

Defendants cite myriad unpublished opinions in support of their contention that the land was wild and unenclosed. The trial court's finding that the land was wild and unenclosed had adequate support in the record in light of the court's site visit, the photographs, and the various testimonies. Regardless, resolving whether that part of the circular driveway existing on lot 10 was wild and unenclosed is not necessary for a resolution of the prescriptive-easement question.

With respect to the claim by the LaBarges, we conclude that there is clearly no prescriptive easement and very little discussion is required with regard to this claim. Edward LaBarge admitted that he had never used the circular driveway because it was already blocked when he and his wife bought their home. Edward indicated that a prior owner of his property had stated that he had used the circular-driveway area to "go to the country club" on his golf cart, but no time period was given.

Regarding the Glasser family's claims, RG was the only Glasser to testify. RG acknowledged that his family had held no interest in the property around Lake 27 until 1990 and that when he visited the area before that time, it was as a friend and guest of Joseph. He admitted

-6-

that when he used the circular driveway, he believed that he had permission to use it and was not staking a claim to it. RG did not think that he was trespassing because he was Joseph's friend and the driveway was on Joseph's family's property. RG agreed that it had been his understanding "throughout his use of the driveway" that "the Scotts would have had the legal right to do whatever they wanted to do with it because it was their property." It was revealed that RG had previously communicated with Michael in 2017 and had agreed that adding a path outside of the circular driveway that would connect Red Finch Rd. to Eagle Landing Trail would be an acceptable resolution for various concerns by the parties. RG informed Michael that he preferred a road but that a trail would be acceptable. RG stated that he had initially acquiesced to Michael's blocking of the circular driveway because he thought Michael had the legal right to do so. RG testified that he began to believe that he had acquired some claim to the driveway "after [he] talked with Joe and after the driveway was blocked." Clearly, under these circumstances, there was no hostile use for the required 15 years. See *Killips*, 244 Mich App at 259 (hostile means a use that is not consistent with the owner's rights).

Plaintiffs cite *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 685-686; 619 NW2d 725 (2000), evidently for the proposition that use of an area under the mistaken belief that an express grant allowed the use can establish a prescriptive easement. But plaintiffs do not develop this argument or indicate who was allegedly using the area in question under the mistaken belief that an express grant existed. As stated in *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998):

> It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. [Quotation marks and citation omitted.]

Plaintiffs point out that when defendants bought some of their property, but not the Scott Lake House, in 2002 from a family with the surname of "Douglass," the deed stated that the grant was "subject to an easement for a common driveway for ingress and egress over and across the Easterly 20.00' thereof." Plaintiffs claim, with no factual support, that this pertained to the southeastern portion of the circular driveway. They did not, however, have a surveyor confirm this assertion. Plaintiffs, quite simply, failed to support their contention. We find plausible defendants' claim that the reference to an "Easterly" 20 feet was likely a reference to the 1959 easement—with the mistake of using 20 feet instead of 30 feet as set forth in the 1959 easement.

Plaintiffs also note that the deed granting defendants the Scott Lake House in 2006 provided that the grant was "subject to an easement for a common driveway for ingress and egress over and across the easterly 20 feet thereof." Plaintiffs contend that this corresponds to the northeastern part of the circular driveway. But plaintiffs again provide no factual support for this assertion. Plaintiffs did not at any point prove that the northern portion of lot 10, i.e., the portion sandwiched between the boundary of lot 10 in the north and defendants' pole barn in the south that stretched from Lake 27 in the west to the north-south line of the 1959 easement in the east,[3] was

---

[3] This vaguely rectangular area encompasses the "lot 10" portion of the circular driveway.

previously split between the Scott family and the Douglass family. Scott Douglass testified that in 1990, he began visiting Lake 27 more regularly, staying at the Scott Lake House until his parents built their own house "[j]ust south" of the Scott Lake House, but still on lot 10. This general information is not helpful in establishing plaintiffs' assertion. Plaintiffs cite nothing in the record indicating that the Douglass family previously owned land on which the circular driveway sits. We also note that Michael affirmatively testified that the description set forth in the deed from the Douglasses did *not* pertain to the circular driveway.[4] Plaintiffs' unclear argument about a "ratification" of the alleged prescriptive easement by way of deed is wholly unpersuasive.

Plaintiffs also refer to a 1971 easement and argue that it "ratified" their prescriptive easement. In 1971, owners of property within lot 10 prepared an agreement for an "easement for common driveway." The agreement stated that the easement was for "creating a common driveway over and across all of Lot 10." The easement ran partly north and south and partly east and west and was "for the benefit of the owners of the separate parcels of land constituting said Lot 10." The easement was to follow an existing "Log Road" and was to begin at "the east line" of lot 10, run west for approximately 350 feet, and then divide, "running north and south to the north-south lines of said lot 10 respectively." Plaintiffs contend that the vertical (north-south) portion of the 1971 easement fits with the western part of the circular driveway. In closing arguments at trial, plaintiffs' counsel maintained that plaintiffs were not seeking a prescriptive easement over the western part of the circular driveway, but he implied that they were seeking validation of an express easement for that part. But Joseph testified at trial that he agreed with the filling in of the western part. He also agreed that he was "no longer making a claim" to the western half of the circular driveway and, crucially, admitted that such a claim was "not part of this lawsuit." The complaint did not mention an express easement based on the 1971 document. Also, at trial, Joseph admitted that he did not know for sure if the 1971 easement lined up with the circular driveway.

Moreover, even if it is assumed to be true that the vertical portion of the easement aligned with the western portion of the circular driveway, the easement agreement stated that the easement was solely for the benefit *of the owners of lot 10*; this did not include plaintiffs. In addition, plaintiffs do not explain what they mean by their "ratification" argument. Plaintiffs have conceded that they are not seeking a prescriptive easement over the western part of the circular driveway, so an alleged express easement corresponding with the western part would not "ratify" plaintiffs' alleged prescriptive easement. And nobody testified that he or she was relying on the 1971 easement to use the circular driveway.

The bottom line is that plaintiffs' prescriptive-easement arguments about an entitlement to access lot 10 and use the circular driveway are not persuasive, and we hold that they do not serve as a proper basis to reverse the trial court's ruling.

---

[4] The trial court did not rule on this particular argument about the conveyances to Michael, although it was raised in plaintiffs' trial brief. To be fair, the argument was sparse and lacked citations to necessary proofs.

## C. 1959 EASEMENT

Plaintiffs contend that the trial court erred when it ruled that only NG was entitled to use a recorded 1959 easement. The 1959 easement, which the parties agree runs along the eastern edge of the original Hallenius Estates, was established "for purposes of ingress and egress by all parties hereto and their heirs and assigns." The agreement provided that the signatories were "desirous of establishing an easement along said line." The easement agreement stated that "said easement is intended and declared to run with the land and shall inure to the benefit of the parties hereto and to their heirs and assigns as long as they shall own or have an interest in land lying along the said land." The trial court ruled that of all the plaintiffs, only NG benefits from this easement because only her property is "lying along" the easement.

Plaintiffs contend that it is not in dispute that they have an interest in Eagle Landing Trail[5] and that, because Eagle Landing Trail intersects with the 1959 easement, all the plaintiffs have land "lying along" the easement. Although a summary disposition ruling is generally reviewed de novo, *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684; 965 NW2d 707 (2020),[6] this specific argument about the intersection with Eagle Landing Trail was first raised in a motion for relief from judgment filed over a year after the summary disposition ruling. The argument was not raised at the time of the summary disposition motion, nor was it was raised in a motion for reconsideration relative to the summary disposition ruling. The issue was not even raised during the bench trial. Only after the trial court issued a 36-page opinion and order did plaintiffs choose to first raise the argument concerning the 1959 easement and its alleged intersection with Eagle Landing Trail. Certainly, the argument could have been posed earlier. In denying the motion for relief from judgment, the trial court noted that the case had been lengthy and that the court had been thorough and contemplative in its rulings, which is certainly true. The trial court did not expressly address the newly-raised, easement-intersection argument, and we similarly decline to address this highly untimely and effectively unpreserved issue.

Even though the failure to raise the issue is even more egregious under the circumstances that developed in this case, a somewhat analogous situation exists when a party first raises an argument in a motion for reconsideration. "As a general rule, an issue is not preserved if it is raised for the first time in a motion for reconsideration in the trial court." *George v Allstate Ins Co*, 329 Mich App 448, 454; 942 NW2d 628 (2019). "Ordinarily, a trial court has discretion on a motion for reconsideration to decline to consider new legal theories or evidence that could have been presented when the motion was initially decided." *Yoost v Caspari*, 295 Mich App 209, 220; 813

---

[5] Eagle Landing Trail runs westward along the northern properties (properties north of lot 10), almost to Lake 27.

[6] It is obvious from reviewing the lower court record that the issue regarding whether plaintiffs had an express easement on the basis of the recorded 1959 easement was resolved at a summary disposition hearing on December 30, 2019. The court stated, "I'm going to grant Plaintiffs' Counter-Motion for Summary Disposition under MCR 2.116(I)(2) [only] as it relates to [NG's] express 1959 easement." But plaintiffs, for some reason, cite, in the context of this issue, the clear-error standard of review for findings made after a bench trial.

NW2d 783 (2012). But "[a] circuit court does not err by declining to consider legal arguments raised for the first time in a motion for reconsideration." *Pierron v Pierron*, 282 Mich App 222, 264; 765 NW2d 345 (2009).

Furthermore, in *In re Conservatorship of Murray*, 336 Mich App 234, 241; 970 NW2d 372 (2021), this Court observed:

> This Court has discretion to review unpreserved issues in civil cases if review would prevent manifest injustice, if review is necessary for proper resolution of the case, or if the issue involves a question of law and the facts necessary for determination have been presented. . . . This Court, however, exercises its discretion sparingly and only when exceptional circumstances warrant review. [Citations omitted.]

We conclude that review is unnecessary to prevent manifest injustice or to properly resolve the case and that evidence is lacking to properly resolve the issue. In sum, there are no exceptional circumstances warranting review.

Plaintiffs also make the preserved argument that because lots 11, 12, and 13 existed as a singly-owned mass of land at the time of the 1959 easement, every current owner of parcels within those lots is entitled to use the 1959 easement. The trial court concluded that only NG, and not Joseph or the other plaintiffs, owned an "interest in land lying along the 1959 easement." The court indicated that it did "not accept plaintiffs['] argument" that because various plaintiffs' parcels were at one time part of the larger parcel, they "still own land which lays [sic] along the easement." The trial court's ruling is consistent with the plain language of the easement, which, again, provided that the "easement is intended and declared to run with the land and shall inure to the benefit of the parties hereto and to their heirs and assigns *as long as they shall own or have an interest in land lying along the said land*." (Emphasis added.) Plaintiffs' properties, except for the land owned by NG, do not lie along the 1959 easement. We do not discern any error.

We affirm. Having fully prevailed on appeal, defendants may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ David H. Sawyer
/s/ Mark T. Boonstra

-10-