## TUCKER *v.* GVOIC.

**1. ADJOINING LANDOWNERS—LANDLORD AND TENANT—CONTROL OF BUILDING AT TIME OF COLLAPSE.**

City in which defendant's building was located *held,* to have had control of building at time it collapsed and inflicted damage to building on adjoining lot, also owned by defendant, but occupied and used as a tavern by tenant, plaintiff in action of assumpsit.

**2. LANDLORD AND TENANT—POSSESSION—QUIET ENJOYMENT—POLICE POWER—EMINENT DOMAIN.**

A lessee is subject to such interference or disturbance of his possession as results from the exercise of the police power or the power of eminent domain.

**3. SAME—COVENANT OF QUIET ENJOYMENT—DEFECT OF STRUCTURE—CONSTRUCTION OF LEASE.**

Covenant of lease, giving tenant quiet enjoyment of the leased premises, did not give him a cause of action in assumpsit for damages resulting from collapse of building owned by landlord on adjoining land not leased to plaintiff tenant, when construed with other provisions of lease relative to damages arising from defect of the structure, of which leased premises were a part, and the carrying of liability insurance.

Appeal from Wayne; Fitzgerald (Neal), J. Submitted October 6, 1955. (Docket Nos. 46–48, Calendar Nos. 46,545–46,547.) Decided December 28, 1955. Rehearing denied April 2, 1956.

REFERENCES FOR POINTS IN HEADNOTES

[1] 32 Am Jur, Landlord and Tenant §§ 768, 773.
[2] 32 Am Jur, Landlord and Tenant § 281.
[2] Condemnation of premises or part thereof as affecting rights of landlord and tenant *inter se.* 43 ALR 1176; 163 ALR 679.
[2, 3] Breach of covenant for quiet enjoyment in lease. 62 ALR 1257.
[3] 32 Am Jur, Landlord and Tenant §§ 268–286.

Assumpsit by Herman Tucker, originally with others joining, against Stella Gvoic for breach of covenant for quiet enjoyment in lease occurring as result of the collapse of lessor's adjacent building. Three cases consolidated for trial and appeal. Verdict and judgment for plaintiff. Defendant appeals. Reversed.

*Casper C. Cutler* and *Walter M. Nelson,* for plaintiff.

*Nicholas Salowich* and *Dee Edwards,* for defendant.

KELLY, J. Defendant owned a building with a 70-foot frontage on Woodward avenue, between Jefferson and Woodbridge, in the city of Detroit. This 70-foot frontage was divided by a brick wall into two 35-foot units.

Defendant's unit No 1, a 4-story building, known as 314 Woodward, was leased by the defendant to the plaintiffs, who occupied and used same for a bar or tavern.

Defendant's unit No 2, a 4-story building, known as 308–310 Woodward (immediately south of unit No 1), was leased by defendant to the Ritter Company.

Another 3-story brick building which will be referred to in this opinion as the Oxenrider building, is located immediately south of defendant's unit No 2.

On November 8, 1951, defendant's building unit No 2 completely collapsed. This collapse caused damage to the premises occupied by plaintiffs (unit No 1), and a jury awarded plaintiff Herman Tucker $3,515.60 damages.

Plaintiff Sam Tucker was dismissed at pretrial and the motion to dismiss plaintiff Minnie Tucker was granted at the close of plaintiffs' proofs.

Two questions are presented in this appeal: (1) Was the building under the control of the defendant or the city of Detroit at the time of the collapse; and (2) Did the lease give to plaintiff a right to recover damages in assumpsit?

Question 1: *Did the defendant or the city of Detroit have control of the building in regard to demolition or the taking of necessary steps to prevent collapse?*

This question was decided by this Court in *Oxenrider* v. *Gvoic,* 340 Mich 591 (October 4, 1954). The collapsed building was between a building owned by Oxenrider and the building occupied by the plaintiff in this case. In the *Oxenrider* decision this Court called attention to the fact that the record in that case disclosed that (p 599):

"Prior to July 25, 1951, defendant has substantially complied with all notices served on her by the building department regarding repairs to her building. We note that on August 14, 1951, the common council of the city of Detroit approved the following resolution:

" 'Resolved, that the department of public works be and it is hereby authorized and directed to immediately dismantle and remove the third- and fourth-story brick manufacturing building at 308–310 Woodward avenue, charging the cost of the work against the property.' "

This Court affirmed the judgment denying to Oxenrider damages from the present defendant, stating (p 601):

"In our opinion the city of Detroit was not acting as an agent for defendant from July 25, 1951, to the time the building collapsed. It follows that during this period the building was either in the control of

defendant or the city of Detroit. From the actions taken by the city, as above mentioned, the defendant had a right to assume that the building was going to be demolished under and by virtue of the authority of the city. Moreover, the defendant was legally prevented from repairing her building or correcting its dangerous condition by reason of a resolution by the common council adopted in 1947.

"Under the circumstances in this case the control of the building, insofar as its demolition was concerned, was in the control of the city. It follows that defendant cannot be charged with the failure of the city to have the building demolished prior to its collapse."

There is nothing in the present record to cause this Court to reverse its findings in the *Oxenrider Case, supra*. Therefore, we now hold that the control of the building, insofar as its demolition was concerned, was in the control of the city.

Question 2: *Does the lease provision "that the tenant * * * may peaceably and quietly have, hold, and enjoy the demised premises for the term aforesaid" give to the plaintiff a cause of action in assumpsit?*

Plaintiff does not contend that the facts in regard to control of the collapsed building differ in the present case from the facts in the *Oxenrider Case, supra*. Plaintiff, however, argues that the *Oxenrider* decision is not controlling because Oxenrider sued in trespass and the present case is in assumpsit for a breach of covenant in a written lease, and further that paragraphs 22 and 24 of the lease apply only to the leased premises.

Paragraph 22 of the lease provides:

"That the landlord shall not be liable for any damage or injury of the tenant, the tenant's agents or employees, or to any person entering the premises, or to goods or chattels therein, resulting from any

defect in the structure or its equipment, or in the structure or equipment of the structure of which the demised premises are a part, or arising through the acts or negligence of other occupants of the structure of which the demised premises are a part, and to indemnify and save the landlord harmless from all such claims of every kind and nature."

Paragraph 24 provides:

"The tenant agrees to save the landlord harmless from any liability for damages to any persons or property upon or about the leased premises from any cause whatsoever, and agrees to procure at his own expense public liability insurance for the benefit of the landlord in the sum of $10,000 for damages resulting from one casualty, and to keep such insurance in force during the term hereof, and to deliver the policy or policies to the landlord; and upon his failure so to do, the landlord may obtain such insurance and charge the cost thereof to the tenant as additional rental."

In construing a lease we are cognizant of the general principle that the lessee shall be subject to such interference or disturbance of his possession as results from the exercise of the police power, and this. principle is set forth under annotation entitled "Breach of covenant for quiet enjoyment in lease," 62 ALR 1257, 1297, where it is stated:

"One of the conditions of all leases is that the lessee shall be subject to such interference or disturbance of his possession as results from the exercise by public authorities of their rights, under either the power of eminent domain or police regulations. In this respect it has been pointed out that all deeds are to be construed agreeably to the intent of the parties; and, in a lease or conveyance containing a general covenant for quiet enjoyment, it must be assumed that the parties had in view eviction, injury, or disturbances to be made by virtue only of exist-

ing rights, and not of rights afterward acquired; such rights cannot be presumed, from the general words of the covenant, to have been contemplated."

The only comment in plaintiff's brief, in regard to the contention that paragraphs 22 and 24 of the lease apply only to the leased premises, is as follows:

"A reading of paragraphs 22 and 24 of the lease clearly discloses that both of them apply to liabilities of the lessee only in the leased premises. They could by no possibility or stretch of a rational imagination be extended to circumstances and conditions outside of the leased premises.

"Under the circumstances of this case no liability on the part of the lessee is possible."

Plaintiff's cause of action is based upon the allegation that damages occurred because "debris from the collapse of defendant's said building next door remains as it fell in and upon portions of the premises leased by defendant to plaintiffs."

To adopt plaintiff's theory this Court would have to construe the lease in such a way that plaintiff would have no cause of action if damages had been caused by debris falling on plaintiff's 35-foot leased premises from the building he leased, but that plaintiff would have the right to damages if debris fell from the adjoining 35 feet that defendant owned and plaintiff did not lease.

The record in this case does not disclose the age of defendant's buildings, but the pretrial statement established the fact that the collapsed building was "of ancient construction of brick and joists and similar early construction." This fact was undoubtedly known to plaintiff when paragraphs 22 and 24 were agreed upon.

Defects in the structure that might cause damages were contemplated by the parties to the lease as is clearly disclosed by paragraph 22 of the lease. In

paragraph 24 plaintiff agreed to save the landlord harmless for damages on or about the leased premises from any cause whatsoever.

Plaintiff's bill of particulars contains the following item:

"Loss of business due to barricading
(May, 1951 to November, 1951) ...... $6,000."

Plaintiff in his counterstatement of fact says:

"A barricade approximately one story high and 15 feet from the front of the building was erected around 310 Woodward in the last 2 weeks of August, 1951 in breach of the covenant for full, peaceful and quiet enjoyment."

The record, however, discloses no complaint about the barricade or request to repair the building was made by plaintiff to defendant in this period of more than 60 days between the erection of the barricade and the collapse of the building.

We cannot agree with plaintiff's contention that the lease gave to him rights of recovery of damages beyond those possessed by Oxenrider, but, to the contrary, find that the lease gave to the defendant rights to resist a claim for damages in the present case that the defendant did not possess in the *Oxenrider Case, supra.*

The provision in the lease "that the tenant \* \* \* may peacefully and quietly have, hold, and enjoy the demised premises for the term aforesaid" must be construed with the provisions of paragraphs 22 and 24 of said lease, and in so construing this Court holds that the lease did not give to plaintiff a cause in assumpsit.

Other questions raised by the parties hereto need not be commented upon because of the answers to questions 1 and 2 hereinbefore set forth.

The judgment of the lower court is reversed and set aside. Costs to appellant.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.